**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JOHEL ISAAC PEREIRA-VERDI, | § | |
| *Petitioner* | § | |
| | § | |
| v. | § | Case No.  SA-25-CA-01187-XR |
| | § | |
| ACTING DIRECTOR TODD M. LYONS, | § | |
| MIGUEL     VERGARA,     ACTING | § | |
| DIRECTOR SIRCE E OWEN,  WARDEN, | | |
| KARNES   COUNTY   IMMIGRATION | | |
| PROCESSING CENTER, | | |
| *Respondents* | | |

**ORDER ON PETITIONER'S MOTION FOR A**
**TEMPORARY RESTRAINING ORDER**

On this date, the Court considered the Petitioner's Motion for a Temporary Restraining Order (ECF No. 3), Petitioner's brief in support (ECF No. 7), and Respondents' brief in opposition (ECF No. 9). After careful consideration, Petitioner's motion (ECF No. 3) is **GRANTED**.

## BACKGROUND

Petitioner Johel Isaac Pereira-Verdi is a Venezuelan citizen who entered the United States illegally in 2021. ECF No. 1 at 3. Respondents currently have him detained at the Karnes County Immigration Processing Center. *Id*. Respondents have not provided Petitioner with an individualized bond hearing, and thus Petitioner is held indefinitely pending adjudication of his immigration status. The parties dispute that this indefinite detention is a lawful application of 8 U.S.C. § 1225.

## I.  Petitioner's Immigration and Current Detention

Petitioner entered the United States on November 20, 2021. ECF No. 1 at 4. He did so without inspection or admission. *Id.* He was briefly detained two days later. ECF No. 7 at 1. He claimed asylum and was released on his own recognizance. ECF No. 7 at 1. Importantly for the

central issue of this case, Respondent stated that Petitioner's release was pursuant to 8 U.S.C. § 1226. ECF No. 1-1 at 2. That section of the Immigration and Nationality Act (INA) governs the "[a]pprehension and detention of aliens" and permits the Attorney General to release aliens on bond pending removal. *See* 8 U.S.C. § 1226.

Following his release on bond, Petitioner applied for and received temporary protected status in July 2024. ECF No. 1-1 at 4. This prohibited his removal until at least April 2025. *Id.* He applied to renew his status in January 2025. ECF No. 1 at 5. That application remains pending. *Id.* Relatedly, he maintains his asylum application and intends to assert his asylum claim as a defense in any future immigration removal proceedings. ECF No. 7 at 2.

While released on his own recognizance, Petitioner has complied with all conditions of his release, including the requirements that he attend hearings in immigration court and meet with Respondents. ECF No. 1 at 4. He also married a lawful permanent resident of this country. ECF No. 1-1 at 8. But despite Petitioner's compliance with the terms of his release under § 1226, Respondents detained him during one of his regular check-in appointments on September 2, 2025. ECF No. 1 at 4–5. Respondents have never explained why, after Petitioner spent almost four years complying with the terms of his release, it is necessary to expend government resources to detain him indefinitely. ECF No. 1 at 6.

## II. Respondents Claim That Detention is Mandatory Under 8 U.S.C. § 1225

Respondents only state that indefinite detention pending removal is now mandatory because § 1225, rather than § 1226, controls given Petitioner's circumstances. ECF No. 9 at 5. As support at oral hearing, they point to a recent opinion from the Board of Immigration Appeals within the Department of Justice's Executive Office of Immigration Review. *See Matter of Jonathan Javier Yajure Hurtado, Respondent*, 29 I. & N. Dec. 216 (BIA 2025). In this opinion,

the Board reversed Executive Branch policy by concluding that immigration judges lack jurisdiction to hear applications for bond from those in Petitioner's situation. *See Matter of Jonathan Javier Yajure Hurtado*, 29 I. & N Dec. at 229. Instead, those aliens already present in the United States must be detained under § 1225 and cannot be granted bond under § 1226. *Id.*

Based on this Board opinion, Petitioner was denied a bond hearing on October 6, 2025. The Immigration Judge reviewing that request based the denial on a lack of jurisdiction. But while the Board's opinion may be binding on Respondents, "it remains the responsibility of the court to decide whether the law means what the agency says it means." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 109 (2015) (Scalia, J., concurring in the judgment).

Seeking this review, Petitioner filed this habeas action under 28 U.S.C. § 2241. With this action, "Petitioner is not challenging: an order for removal, the process by which [his] removability will be determined, or the exercise of discretion by the Government to detain [him]." *Kostak v. Trump*, No. CV 3:25-1093, 2025 WL 2472136, at *2 (W.D. La. Aug. 27, 2025). Rather, he argues that his detention is (1) unlawful in that it violates the terms of the Immigration and Naturalization Act (8 U.S.C. § 1225–26) and (2) unconstitutional in that it violates due process. ECF No. 7. Pursuant to these arguments, he seeks a temporary restraining order requiring his release from detention or a bond hearing in which the Government bears the burden of demonstrating the need for his continued detention.

## LEGAL STANDARD

The factors that govern an application for a temporary restraining order are the same as those that govern a request for preliminary injunction. *Hill v. Green County Sch. Dist.*, 848 F. Supp. 697, 703 (S.D. Miss. 1994) (citing *Canal Auth. of State of Fl. v. Callaway*, 489 F.2d 567 (5th Cir.1974)). Under well-settled Fifth Circuit precedent the movant must show: (1) a substantial

likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not undermine the public interest. *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997). To determine the likelihood of success on the merits, the Court looks to the standards provided by the substantive law. *See Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 622 (5th Cir.1985). The substantive prerequisites for obtaining an equitable remedy as well as the general availability of injunctive relief are not altered by Rule 65 and depend on traditional principles of equity jurisdiction. *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318–19 (1999).

## DISCUSSION

Petitioner has met the elements required for relief through a temporary restraining order.

## I.  Petitioner Is Likely to Succeed on the Merits

Petitioner claims that Respondents are unlawfully detaining him under § 1225 and violating his Constitutional right to procedural due process in doing so. ECF No. 7 at 7–10. Respondents disagree, arguing that (1) § 1225 applies to Petitioner and (2) the process is adequate "regardless of whether the applicable statute is § 1225(b) or § 1226(a)." ECF No. 9 at 4–5.

The Court looks past the fact that Respondents consistently took the position that § 1226— not § 1225—applied to Petitioner from 2021 until just weeks ago. Even taking Respondents' claim on its face, it is likely to fail on the merits. The Supreme Court has already explained that "§ 1226 applies to aliens already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). "[T]he language of §§ 1225(b)(1) and (b)(2) is quite clear." *Id*. "§ 1225(b) applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." *Id*. at 297. Petitioner first surrendered himself to Border Patrol and sought asylum

in 2021. If there was a time when Respondents could argue that § 1225 applied to him, it was then. The same argument lacks strength years later, after Respondents have released Petitioner into the country on his own recognizance, granted him work authorization, and subjected him to regular check-ins. Because § 1226 rather than § 1225 likely applies to Petitioner, there is a substantial likelihood that he will succeed on the merits of his habeas petition.

At hearing, Respondents pointed to the Board's determination regarding the applicability of § 1225 for support. But "the Court does not find that the [Board]'s alleged change in the interpretation of the subject statutes controls the Court's authority here." *Kostak v. Trump*, No. CV 3:25-1093, 2025 WL 2472136, at *2 (W.D. La. Aug. 27, 2025) (citing *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 395 (2024)). Besides, the Board's interpretation has been subject to criticism upon judicial review: "In recent weeks, courts across the country have held that this new, expansive interpretation of mandatory detention under the INA is either incorrect or likely incorrect." *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *7 (W.D. Tex. Sept. 22, 2025). Petitioner points to over sixty of these cases. ECF No. 7 at 3–4. Respondents muster three cases in opposition. ECF No. 9 at 6. One of those three did not address the applicability of § 1225. This disparity in how courts decide the issue of § 1225's broad applicability is itself persuasive evidence that Petitioner is likely to succeed on the merits.

## II.  The Remaining Factors Support Relief

Respondents argue that continued detention will not cause Petitioner irreparable harm, but in fact benefit Petitioner because "[r]emaining in detention expedites the adjudication of" Petitioner's asylum application. ECF No 9 at 6. It is unclear to the Court why detention is necessary for Respondents to expedite Petitioner's application. But more importantly, this argument ignores the fact that Petitioner's liberty is at stake. "It is well established that the deprivation of

constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Balancing the equities, the deprivation of Petitioner's liberty outweighs any risk posed to Respondents. Petitioner diligently complied with all requirements of his bond for almost four years. Respondents have not alleged that he is a flight risk or danger to the community. These equities thus weigh in favor of relief.

That relief will not undermine the public interest. The Government is paying to detain Petitioner at the Karnes County Immigrant Detention Complex. Petitioner's history of compliance with Respondents' terms of release suggest that this expense is needless. Respondents rightly point out that "both the government and the public at large have a strong interest in the enforcement of the immigration laws." ECF No. 9 at 6. But the Court fails to see how enforcement would be hampered if relief is granted. A temporary restraining order is thus appropriate.

## III. Maintaining the Status Quo Requires Respondents Release Petitioner

Given relief is appropriate, the Court next considers what form that relief should take. Temporary restraining orders should be restricted to maintaining the status quo. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). The status quo means the "last uncontested status." *United States v. F.D.I.C.*, 881 F.2d 207, 210 (5th Cir. 1989) ("[T]he district court has the equitable power to return the parties to their last uncontested status.").

Petitioner seeks release from custody or, short of that, a bond hearing. Respondents state that Petitioner is here illegally, "which entitles the government to detain him by statute, either on a mandatory basis [under § 1225], or at the very least in the exercise of discretion [under § 1226]." ECF No. 9 at 6. This would suggest that relief against unlawful detention under § 1225 is best

granted in the form of an order directing Respondents to provide Petitioner with a bond hearing pursuant to § 1226. In other words, if Respondents *cannot* detain Petitioner under § 1225 but they *can* under § 1226, the appropriate relief would be to order compliance with the latter provision.

But it is not clear that Respondents can now detain Petitioner under § 1226. They represented at oral hearing that they detained Petitioner in September 2025 under § 1225. They did so without revoking or vacating their 2021 order releasing Petitioner under § 1226.  ECF No. 1 at 5. That order remains in effect. Revoking it requires due process. *Pelico et al. v. Kaiser et al.*, No. 25-CV-07286-EMC, 2025 WL 2822876, at *8 (N.D. Cal. Oct. 3, 2025) ("Petitioners enjoy a liberty interest under § 1226(a) and the procedural protections thereunder that cannot be unilaterally abrogated without process by the Government simply 'switching tracks.'"). Thus, returning the parties to the last uncontested status requires Petitioner's immediate release on bond pursuant to the 2021 order.

## CONCLUSION

For the foregoing reasons, Petitioner's Motion for a Temporary Restraining Order (ECF No. 3) is **GRANTED**. Respondents are **ORDERED** to immediately release Petitioner on bond. Respondents are further **ENJOINED** from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decision maker pursuant to 8 U.S.C. § 1226.

It is so **ORDERED**.

**SIGNED** this 10th day of October, 2025.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE